UNITED STATES *v.* NORDIC BAKING & IMPORTING CO., INC. (No. 4981) [1]

[1] C.A.D. 733.

United States Court of Customs and Patent Appeals, January 26, 1960

*George Cochran Doub*, Assistant Attorney General, and *Richard E. FitzGibbon*, Chief, Customs Section, for the United States.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument December 1, 1959, by Mr. FitzGibbon and Mr. Schwartz]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK [2]

MARTIN, Judge, delivered the opinion of the court:

This appeal is from the judgment of the Customs Court, Third Division, sustaining importer's protest against the assessment of "Rytak" under paragraph 733 and holding the merchandise free of duty under the provisions of paragraph 1623. For purposes of this appeal, the pertinent statutory provisions are:

Par. 733. Biscuits, wafers, cake, cakes, and similar baked articles, and puddings, all the foregoing by whatever name known, * * *.

Par. 1623. Bread: *Provided*, That no article shall be exempted from duty as bread unless yeast was the leavening substance used in its preparation. [Free]

The Annecy Protocol to the General Agreement on Tariffs and Trade, T.D. 52373, modified paragraph 1623 to include hard, crisp rye breads containing not more than 5 per centum of wheat flour.

The imported merchandise is hard, crisp rye bread, brownish in color, and we believe it is similar to "Swedish" bread which is said to be made of the same ingredients. "Rytak" is circular in shape with a hole in the center, the overall dimensions being about 10 inches in diameter and one-quarter inch in thickness.

A Mr. Pasheka, a former baker of "Rytak" at the bakery at which the imported goods were baked and presently employed by the owner of Nordic Baking & Importing Co., Inc., testified with respect to the process whereby "Rytak" is manufactured. To 200 pounds of warm water, four pounds of yeast and four pounds of salt are added. Thereafter 200 pounds of "first grade" rye flour is introduced and the resulting composition is mixed in an electrical revolving dough mixing machine for 25 to 30 minutes. The dough is then emptied into a large trough, about 10 by 2½ by 2½ feet, where it remains for sixty to eighty minutes. It rises in that trough from an initial height of about 10 inches to approximately 12 to 14 inches. The dough is transferred to a hopper which feeds it to a belt in a strip about 10 inches wide and about ¼ inch thick. It is then cut into

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

circular portions having small holes in the centers and these discs are fed by the belt to two rollers, upon which rollers are a plurality of pins or needles about ¼ inch long. The function of the pins is to puncture the discs so that any gases interior of the dough may escape without causing large bubbles to form on the surface of the final product. During the rolling the dough is compressed to about one-half of its original thickness of ¼ inch. The discs of dough are "shoveled" onto boards, which boards are placed in a "steam box" or "proof box" wherein the dough is exposed to wet steam for 5 to 10 minutes. During this time the dough rises from a thickness of ⅛th inch to about double that thickness. Thereafter the dough is baked in a 450° oven until it turns brownish, after which it is removed and packaged.

A Mr. Jorgensen, the owner of appellee corporation, stated that when he had baked "Rytak," several of the features in the process outlined above were somewhat different than testified to by Mr. Pasheka. He testified that the dough was kept in the trough for 4 to 6 hours during which time it increased in height 50 to 100%. He also indicated that the increase in thickness in the "steam box" was very slight at the most, and that it certainly was not an increase of double the original thickness. However, this witness stated that he had baked "Rytak" elsewhere than at the bakery from which this importation came. Additionally, he stated that the function of the "steam box" was to remove any dry rye flour which had been dusted on the circles of dough to prevent their adherence to the belt and that the steam therein did not cause the dough to rise.

In its decision, the Customs Court concluded that Congress intended some hard, crisp rye breads to be included within the provisions of paragraph 1623. The court then indicated that, "The issue here is whether, on the record now before us, yeast is or is not the leavening substance of Rytak."

The record provides the following definitions:

Leavening is the action which causes a mass to rise or expand so that the specific gravity is decreased. Usually the agent is a gas such as carbon dioxide, air or steam. To make the gas effective, the mass must hold the gas in bubbles or pockets. There must be enough generation of gas during the baking process to replace the gas lost when the mass does not completely entrap the gas; wheat flour provides a gluten which will completely entrap the gas, but whole rye flour does not.

Yeast when used as a leavening agent promotes the growth of cells producing carbon dioxide gas. Due to the relatively small volume of this gas given off by the yeast action, yeast must be used in a dough where the protein can be developed sufficiently to retain and hold the gas during the baking operation.

Steam leavening is leavening accomplished by control of the dough temperatures during baking so there is a constant and uniform generation of steam in the product to make and hold open spaces in the spongy mass until the mass sets into a porous structure.

The court below held that there was evidence in the record that steam and oven baking, as well as yeast, contributed to the leavening of "Rytak." However, it was that court's opinion that steam and oven baking are not leavening substances within the meaning of paragraph 1623, and that yeast was the only such substance used. With respect to this issue, the court nowhere appeared to rely upon the incorporated record in *A. V. Olsson Trading Co., Inc.* v. *United States*,[3] 33 Cust. Ct. 93, C.D. 1641 (1954), which record was incorporated over appellee's objection.

The parties do not contest the lower court's finding that "Rytak" is bread. The issues in this case all revolve around the meaning to be attributed to "the leavening substance" in paragraph 1623.

The Government states that it has no quarrel with the decision below with respect to the findings of fact. Its sole disagreement is with the conclusions of law. It is the Government's position that "leavening substance" means any agent which will cause leavening, and that steam is such a substance. Since steam contributes at least in part to the leavening, the argument continues, then "Rytak" cannot fall within the duty free provision because that includes only those breads in which yeast is the only leavening substance. ▇ With respect to the incorporated *Olsson* record, the Government contends that the failure of the appellee to cross appeal means that the record has been properly incorporated insofar as this appeal is concerned. In connection with that point however, appellee opines that it is unnecessary to cross appeal on a question of that nature if a party merely seeks affirmance of the judgment below. We agree with appellee.

Appellee submits that the term "substance" was used in the sense of ingredient, and that such a definition does not fit steam. Additionally, it points out that the only purpose of the steam, as was stated by one of the witnesses, was to remove the dusting flour from the bread and not to leaven. Consequently, the only leavening substance used in the manufacture of "Rytak" within the meaning of paragraph 1623 was yeast.

▇ Our responsibility in this, as in all similar controversies, lies in endeavoring to determine the intent of Congress. In the instant case the Summary of Tariff Information, 1929, court decisions prior to 1930, and Congressional activities preliminary to the passage of paragraph 1623 are significant. Not only do those sources definitely

[3] That case involved the same paragraphs here under consideration and dealt with the classification of "Ry-King, light, thin," a hard crisp rye bread imported from Sweden. The ingredients there were rye flour, yeast, salt, and water. The Customs Court concluded that hard crisp rye breads are bread within the meaning of paragraph 1623, but found on all of the evidence that the "final and permanent leavening of the finished product is caused by steam," and held that yeast was not the leavening substance used in the preparation of Ry-King, light, thin.

establish that merchandise of the type at bar is "bread" within the purview of paragraph 1623, but they also indicate that the yeast proviso is satisfied if yeast is the leavening substance used in the preparation of the bread.

The history of paragraph 1623 is interesting with respect to two aspects of this case, one, the question of whether "Rytak" is bread, and the other of whether yeast is the leavening substance used in its preparation. The analysis of the legislative history below makes it strikingly clear that "Swedish" or hard crisp rye breads were considered by Congress to be bread within the meaning of paragraph 1623, and the Government does not dispute this. As to the other question, the only issue before us, this data is worth noting in some detail.

After the enactment of paragraph 1522, Tariff Act of 1922, which was identical to paragraph 1623, Swedish hard crisp *rye* breads were classified in several instances under paragraph 733,[4] but the Board of General Appraisers sustained protests and held the imported merchandise to be bread within the purview of paragraph 1522. *Pollack Weeks & Co.* v. *United States*, 45 Treas. Dec. 907, Abstract 46940 (1924) (Swedish health bread); *Swedish Produce Co.* v. *United States*, 46 Treas. Dec. 649, Abstract 47815 (1924), and *Swedish Produce Co.* v. *United States*, 47 Treas. Dec. 915, Abstract 48621 (1925) (Swedish hardtack); *C. L. Benson* v. *United States*, 47 Treas. Dec. 1019, Abstract 49155 (1925) (Spisbrod, Spisknackebrod, and Delikatess Kuvertbrod); *C. W. Sheldon & Co.* v. *United States*, 48 Treas. Dec. 623, Abstract 49838 (1925) (Delikatess Kuvertbrod).

The Summary of Tariff Information, 1929, in a discussion of "BREAD (LEAVENED WITH YEAST)" under paragraph 1522 reads in part (pages 2216–7):

Imports.—In 1927, of the total imports, 68.5 per cent came from Sweden; 10.4 per cent from Canada; 9.3 per cent from Finland; 5.3 per cent from Germany. Imports from Sweden consist mainly of a hard, dark wafer, *which is yeast leavened*, made from *rye* flour. The bread usually comes packed in small paper cartons holding one-half to 1 pound. It is usually round, although some is rectangular in shape. Practically all are labeled "Swedish Bread," with an accompanying designation in Swedish such as "Spisbrod" or "Spisknackebrod." * * * [Emphasis ours.]

Competitive conditions.—Imports from Canada are mainly the ordinary white breads, and are of minor importance. Imports of Swedish bread compete directly with hard, unsweetened biscuits, crackers, and with unleavened bread. *Swedish bread is used for similar purposes as these products, and resembles some of them in appearance.* It differs from most of the domestic products of this type in that *it is leavened with yeast.* [Emphasis ours.]

---

[4] Paragraph 733 of the Tariff Act of 1922 reads as follows :

Biscuits, wafers, cake, cakes, and similar baked articles, and puddings, all the foregoing by whatever name known, whether or not containing chocolate, nuts, fruits, or confectionery of any kind, 30 per centum ad valorem.

DECISIONS

*Swedish health bread* shown to contain yeast as a leavening substance has been held exempt from duty under paragraph 1522 (Ab. 46940 and other decisions.) *Hard bread and hard baked biscuits* have been held free under paragraph 1522, rather than dutiable at 30 per cent under paragraph 733. (Ab. 47886.)

There was substantial interest shown in the duty-free bread provision before the House and Senate committees when that tariff provision was being considered. A brief filed with the House Committee on Ways and Means (Tariff Readjustment, Hearings, 70th Cong., 2d sess., vol. 15, page 8080) included the following:

There is a rapidly developing industry in this country which uses American rye in the production of crackers. Section 733 of the present tariff law provides that all breads of a cracker class shall pay a duty, while breads containing yeast are on the free list. During 1928 about 2,000,000 pounds of *Swedish bread made out of foreign rye* was imported into this country free, simply because it *contained a very small quantity of yeast.* American manufacturers declare that this so-called Swedish bread should be classified as a cracker and made dutiable. We concur in this belief. [Emphasis ours.]

A similar suggestion is found on page 8195 of the same volume in connection with the request that Congress limit the duty-free provisions of paragraph 1623 to "light raised loaf [bread]."

The House Committee on Ways and Means was informed (Tariff Readjustment, supra at page 8194), by one of the then members of the House, that:

The information that comes to me from these manufacturers is that in order to get around our law where wafers comes [sic] in under the dutiable list, and to make them come in under the free list as bread, a very slight amount of yeast has been used. *It is not used for the purpose of leavening,* because that is taken care of with the old and well-known process; but it is used for the purpose of having product come in under bread, rather than under wafers. [Emphasis ours.]

At page 8196, a witness stated:

In that connection I was very much interested in reading a letter written by the Commissioner of Customs to Mr. Peterson, who protested against the importation. The last paragraph says:

I will state for your information in this connection that the classification of so-called Swedish health bread has been before the bureau a number of times for consideration and decision, and after most exhaustive investigation abroad *the bureau has been unable to learn that* [*Swedish*] *bread is made without yeast as a leavening substance.* [Emphasis ours.]

The following interchange took place during a Senate subcommittee consideration of the duty-free bread provision (Hearings before the Committee on Finance, United States Senate, 71st Cong., 1st sess., volume XVI, page 154):

Mr. Ausman: I want to say that the Swedish rye bread manufacturers of this country were represented [at the House hearings], and that bread, which is an infinitesimal part of the bread used in this country, was taken off of the free list, and put upon the same basis as crackers and other products like that.

Senator Watson. I think you are wrong about that, according to the House report, paragraph 1623, bread. It is to remain on the free list provided that no article shall be exempted from duty as bread unless *yeast was the leavening substance* used in its preparation. [Emphasis ours.]

The House Committee neither adopted nor suggested to the House any amendment embodying the request which would have excluded "Swedish" type breads from the paragraph, and although the Senate Subcommittee on Finance proposed the incorporation of such an amendment, and the Senate adopted it, the conference committee of both Houses agreed to reenact the paragraph as it had appeared in the Tariff Act of 1922 and the conference report was adopted.

The foregoing convinces us that the issue now before us is substantially that raised and considered by Congress during its deliberations involving paragraph 1623, and that Congress intended products like the merchandise at bar to be imported free from duty.

In support of its contention the Government introduced testimony in this and the incorporated *Olsson* case to the effect that dough made only with rye flour cannot entrap the gases generated by yeast's action so that they will have a leavening effect upon the dough.

Whether this conclusion is correct or not is irrelevant since under paragraph 1623 the merchandise was to be free from duty if "yeast was the leavening substance *used* in its preparation." [Emphasis ours.] Without question yeast was used in the preparation of the imported merchandise and no one doubts it is a leavening material. The Summary of Tariff Information, 1929, in describing these products refers to rye flour "which is yeast leavened." The cases between 1922 and 1929 indicate that the Board of General Appraisers felt that "Swedish" rye breads could be leavened with yeast. Additionally, the committee hearings included suggestions that yeast might not be capable of leavening rye flour and that yeast was not used for leavening in the "Swedish" rye breads. Despite all of this information, of which we must assume Congress was apprised, paragraph 1623 was reenacted without change. Therefore, we feel compelled to conclude that Congress was satisfied that yeast would have a leavening effect upon dough made of rye flour.

Counsel for the Government further argues that in the preparation of the merchandise at bar the batter was exposed to steam which might have caused it to rise slightly. Although the testimony is conflicting on this point, we are asked to conclude from this that yeast was not the *only* leavening substance used and, therefore, that the proviso of paragraph 1623 had not been met. However, we believe that Congress in using the word "substance" meant a material ingredient and, insofar as the record shows, yeast was the *only* leavening *ingredient* used in the preparation of the merchandise at bar. The

steam which the Government so vigorously contends caused steam leavening was that applied to the outside of the unbaked dough discs in the "steam box." This steam was no more an ingredient, or a "substance" in the statutory language, than the air surrounding the dough in the trough wherein the dough initially rises.

For the above reasons we *affirm* the decision of the Customs Court.

KIRKPATRICK, J., concurs in result.